OPINION OF THE COURT
Bentley Kassal, J.
FACTS
This is a medical malpractice action in which plaintiff claims a hearing loss. The defendant seeks to have a physical examination by means of two medical procedures, namely, an X ray of the temporal bone and an electronystamography test, as well as the taking of an appropriate history from the plaintiff. The claimed basis for these tests is to “establish whether or not the plaintiff has a congenital or an anatomical abnormality to which his hearing loss can be attributed.”
CONTENTIONS AND DECISION
Addressing these two issues, the plaintiff objects to both tests and cites Goldman v Linkoff (45 AD2d 709), as the principal authority to buttress this position. The Goldman decision (supra), relied upon by plaintiff, sets forth three basic propositions: (1) X rays may generally be taken in connection with a physical examination of a party, (2) in the case of a serious injury, more than one physical examination is proper, and (3) a physical examination of the body by an invasive procedure in the nature of a myelogram shall not be ordered.
*757 The respective positions of the parties and the court’s decision are:
(1) X rays: Plaintiff states that these would have a “potentially dangerous effect in light of the large amounts of radiation plaintiff has already received.” It is also contended that there are no compelling reasons for X rays nor has the relevance of X rays been shown in this case.
Defendant claims the X-ray tests of the temporal bone will determine if an anatomical abnormality exists.
As stated in the Goldman case (45 AD2d 709, 710, supra), “[i]t is well settled that X rays may be taken in connection with a medical examination” (citing authorities).
The party resisting such X rays has the burden to establish by competent medical testimony that they are dangerous or harmful. The plaintiff has not sustained this burden. Accordingly, plaintiff will submit to such X-ray examination.
(2) Electro-nystamography test: Defendant seeks this test to assess labyrinthine function (internal ear). As part of such application, it submitted the affidavit of its medical expert, Dr. Alvin Katz, who specializes in otorhinolaryngology (eye, ear and nose). He stated that he examined plaintiff and requires this test to complete his evaluation. He adds: “The test is not painful, invasive or dangerous to any great degree.” He then describes the test as being to “irrigate the ear canal and attempt to stimulate the labyrinth. At same time to objectively record responses.”
In opposition, the plaintiff refers to a “test administered to record eye movements” and cites a portion of the treatise Ballinger, Diseases of the Nose, Throat and Ear (12th ed, p 276), which describes this as follows: “electrodes are placed in the plane of the pupils when the patient’s gaze is straight ahead”. Even if we were to assume it applies to the same test, there is no reference to the test being painful or invasive. Furthermore, as distinguished from movant’s supporting documents, there is no statement from any medical expert to buttress plaintiff’s position.
Addressing this aspect of the Goldman decision, namely, that this is an “invasive procedure”, the plaintiff seeks to *758 bar the electro-nystamography test solely on the basis of the treatise’s definition and her otherwise unsupported statement that the test “is an invasive test”. (Opposing affidavit, pi.)
The burden of establishing that a test incident to a physical examination is invasive, painful or potentially dangerous, is upon the party opposing it, unless it be a widely known and accepted fact, such as with a myelogram. The plaintiff has failed to sustain that burden.
(3) Part of the relief sought is that plaintiff be directed to give a medical history. Obviously, this is part and parcel of any complete physical examination and the same will be given at the time thereof. Accordingly, the timetable for the relief granted herein is a follows:
(a) Within 30 days after service of a copy of this order with notice of entry, all the authorizations sought, which have been agreed to, will be provided to defendants’ attorneys;
(b) Plaintiff shall appear at the office of Dr. Alvin Katz within 60 days after the service of this order at a time to be set by defendants on at least ten (10) days’ notice and, at that time, he shall give a medical history, and submit to X rays and an electro-nystamography test; and
(c) Defendants’ motion to strike this action from the Trial Calendar is denied.